```
                  UNITED STATES DISTRICT COURT
                     DISTRICT OF NEW JERSEY
```

|  |  |
|---|---|
| LEON M. STEED, | HONORABLE JOSEPH E. IRENAS |
| Plaintiff, | Civil Action No. 06-1107 (JEI) |
| v. |  |
| JO ANNE B. BARNHART, Commissioner of Social Security, | **OPINION** |
| Defendant. |  |

**APPEARANCES:**

JACOBS, SCHWALBE & PETRUZZELLI, P.C.
By: Robert Anthony Petruzzelli, Esq.
Woodcrest Pavilion
Ten Melrose Avenue, Suite 340
Cherry Hill, NJ 08003
    Counsel for Plaintiff.

CHRISTOPHER CHRISTIE, UNITED STATES ATTORNEY
By: Jennifer Susan Rosa, Esq.
Special Assistant U.S. Attorney
Social Security Administration
Office of the General Counsel
26 Federal Plaza, Room 3904
New York, NY 10278-0004
    Counsel for Defendant.

**Irenas**, Senior District Judge:

   Leon M. Steed ("Steed") brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), and Section 1634(c)(3) of the Act, 42 U.S.C. § 1383(c)(3), for review of the final determination of the Commissioner of Social Security (the "Commissioner"), denying Steed's application for a closed period of Social Security

Disability Insurance Benefits, from March 1, 1995 through May 30, 1999.  For the following reasons, this Court affirms the Commissioner's decision.

**I.**

On January 5, 1998, Steed filed an application with the Social Security Administration (the "SSA") for a period of disability and disability insurance benefits.[1] (R. at 291.)  He alleged an inability to work as of March 31, 1995. *(Id.)*  The SSA denied Steed's claim and, subsequently, denied his request for reconsideration. (*Id.* at 58, 68-70, 291.)

Steed appealed the denial of his claim and timely requested a hearing on January 4, 1999. (R. at 71, 291.)  The hearing was held before an Administrative Law Judge (the "ALJ") on July 29, 1999, in Voorhees, New Jersey. (*Id.* at 17, 291.)  ALJ Michal L. Lissek issued a decision dated August 23, 1999, holding that Steed had engaged in substantial gainful activity after his alleged onset disability date.  Therefore, Steed "was not under a 'disability' as defined in the Social Security Act, at any time through the date of this decision" and "not entitled to a period of disability or disability insurance benefits."  (*Id.* at 19-20, 291.)

---

[1]Steed previously filed an application for Disability Insurance Benefits, which was denied in December 1996.  No appeal was taken at that time, but Steed has preserved his request to reopen the prior determination under 20 C.F.R. §§ 404.987, 988, 989.  (*See* Pl. Brf. at 1.)

Steed requested review of the ALJ's decision by the Appeals Council of the SSA, which denied his request on March 16, 2001. (R. at 4-5.)  Steed then appealed to the District Court of New Jersey.  (*Id.* at 311.)  On March 25, 2002, the parties consented to a voluntary remand of the matter for additional administrative proceedings, thereby dismissing the claim.  (*Id.* at 311-12.)

On August 13, 2003, a second administrative hearing was held before ALJ Joseph M. Hillegas in Voorhees, New Jersey.  (R. at 292.)  At the hearing, Steed requested that his SSA application be amended to reflect a closed period of disability beginning on March 31, 1995 through May 30, 1999.  (R. at 228, 292.)  In a decision dated February 3, 2004, ALJ Hillegas determined that Steed "was not under a 'disability' as defined in the Social Security Act, during the closed period beginning March 31, 1995 and continuing through May (not the first) 1999."  (*Id.* at 291-304.)

On May 18, 2004, upon Steed's request, the Appeals Council again remanded the matter for additional administrative proceedings.  (R. at 330-33.)  The Appeals Council remanded the case to clarify the February 3, 2004 hearing decision, which stated that Steed had a severe mental impairment, but did not provide an evaluation of mental limitations.  (*Id.* at 332.)  Additionally, the decision stated that Steed's residual functional capacity for light work did not preclude his past

relevant work as a custodian, but Steed's description of the job, as well as other jobs, indicated that they were greater than the light level.  (*Id.* at 332.)  The Appeals Council directed that on remand an ALJ should: (1) give further consideration to Steed's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations, (2) further compare the demands of the claimant's past relevant work with his residual functioning capacity, and (3) if warranted by the expanded record, obtain evidence from a vocational expert to clarify the affect of the assessed limitations on the claimant's occupational base.  (*Id.* at 332-33.)

   Thereafter, on December 20, 2004, another administrative hearing was held before ALJ Hillegas in Voorhees, New Jersey.  (R. at 229.)  In his decision dated April 28, 2005, ALJ Hillegas determined that Steed "was not under a 'disability' as defined in the Social Security Act" and "not disabled, during the referenced period of March 1, 1995 through May 31, 1999."  (*Id.* at 236.)

   Steed again requested review of the ALJ's decision by the Appeals Council of SSA, but his request was denied on January 12, 2006.  (R. at 213-15.)  ALJ Hillegas's decision thus stands as the final decision of the Commissioner.  (*Id.* at 213.)  Subsequently, Steed filed his appeal with this Court on March 10, 2006.

**II.**

Steed is a fifty-seven year old male currently residing in Bordentown, New Jersey. (R. at 229, 242.)  At the time of the final administrative hearing on December 20, 2004, Steed was approximately five feet, eleven inches tall and weighed approximately one hundred eight-five pounds.  (*Id.* at 243.) He has a high school education and his past relevant work experience includes employment as a school custodian.  (*Id*. at 28, 229, 292.)  After the date of alleged closed period of disability, Steed returned to work as a driver and freight processor.  (*Id.* at 230, 243-44.)

Steed alleged that he was unable to work beginning March 31, 1995, when he retired as a custodian from the East Windsor Regional School District ("East Windsor").  (R. at 248-49.) Steed contends that he was unable to work from March 31, 1995 through May 30, 1999 because he suffered from back pain caused by herniated discs, depression, diabetes, and sleeping problems. (*Id*. at 115-20, 125-27, 277.) The record showed that Steed originally injured his lower back on June 3, 1993 while lifting and moving a stage platform when working for East Windsor.  (*Id.* at 230.)  Steed was out of work for approximately seven months. In August 1994, after returning to work, Steed re-injured his back and hip in a slip and fall accident.  (*Id.*)  This resulted

5

in Steed leaving his employment in March 1995.  (*Id.*)

After retiring from his employment with the East Windsor Regional School District, Steed testified that he tried to apply for part-time jobs, including custodial work and security jobs. (R. at 274.)  Steed stated that he even tried "pumping gas" and that he "couldn't handle that."  (*Id.*)  He contended that he was in constant pain and could not work forty hours a week because he could not sit for long periods of time, which also gave Steed difficulty being in an automobile for an extended amount of time. (*Id.* at 254, 269-70, 275.)  He also recounted problems in lifting a quart of milk, going up stairs, and standing for a period in excess of a half hour.  (*Id.* at 280-81.)  Moreover, he testified that he was being treated for depression and suicidal tendencies, but revealed that he was not taking any medications concerning these conditions.  (*Id.* at 281-82.)

The record presented evidence regarding Steed's medical history during the alleged closed period of disability.  On May 27, 1994, Steed was examined by E. Fleischman, D.O. after complaining of lower back pain radiating into his right leg and lower back numbness associated with his injury on June 3, 1993. (R. at 136.)  In his report dated July 8, 1994, Dr. Fleischman determined that Steed had a herniated/bulging disc at L4-5 and a herniated disc at L5-S1.  (*Id.* at 139.)  Dr. Fleischman again examined Steed on August 31, 1995, regarding his August 15, 1994

6

fall.  (*Id.* at 88.)   In his report dated September 1, 1995, Dr. Fleischman again diagnosed Steed as having a herniated or bulging disc at L4-5 and a herniated disc at L5-S1 with recurrent strain and sprain with chronic right sacroileitis[2].  (*Id.* at 91.)

On February 29, 1996, Steed underwent a psychiatric examination by Dr. Edward Tobe, D.O.  (R. at 95.)  In his report, Dr. Tobe diagnosed Steed with reactive anxiety and depression as a result of his work-related injuries and recommended out-patient psychiatric treatment.  (*Id.* at 96.)  Dr. Tobe stated that Steed's thoughts were generally coherent and goal directed, there was no evidence of delusions or hallucinations, his memory seemed to be intact, and he was oriented in all three spheres.  (*Id.*)  However, Steed presented with a mood characteristic of both apprehension and depression, evidenced muscle tension in the face and hands, and showed some sadness in his face and some intermittent downcast eyes.  (*Id.*)  Dr. Tobe also noted that Steed had seen a psychiatrist, Dr. Chiappetta, on one occasion and went to the Drenk Mental Health Center Screening and Crisis Intervention Program twice for depression.  (*Id.*)

On April 28, 1998, Steed was evaluated by Dr. Sidney Tobias, M.D. after complaints of increasingly severe lower back pain,

---

[2]Sacroileitis/Sacroiliitis is an inflammation of the sacroiliac joint. Patients diagnosed with sacroiliitis are often ill, limping, in pain and show a decreased range of motion, but the symptoms are still generally vague. http://www.back.com/causes-inflammatory-sacrolitis.html (last visited on November 6, 2006)

7

which Steed stated as constant and increased by any attempt at physical activity.  (R. at 199.)  Dr. Tobias diagnosed Steed with herniated lumbar discs at L4-5 and L5-S1, residuals of repetitive lumbar strains, and chronic diffuse lumbar and lumbodorsal myositis and fibromyositis.  (*Id.* at 200.)

Dr. Nathaniel Evans, II examined Steed on May 11, 1998 regarding complaints of back pain.  (R. at 154.)  Dr. Evans stated that Steed's range of motion of all joints were within normal limits and his overall mobility and function appeared to be within normal limits.  (*Id.*)  He further opined that Mr. Steed's mental status was appropriate because he displayed a good recent and remote memory, his speech was clear, and his response to the examining situation was within normal range.  (*Id.* at 155.)  Dr. Evans stated that Steed's testing revealed that Steed "may have physical capacity exceeding what he was willing to demonstrate."  (*Id.*)

On July 7, 2003, Dr. Tim Pinsky, D.O. conducted a complete orthopaedic examination of Steed.  (R. at 375.)  Dr. Pinsky noted that Steed complained of lower back pain with cold, wet weather. (*Id.*)  Dr. Pinsky diagnosed Steed as having a remote history of work-related injures, demonstrating herniated disc material. (*Id.* at 377.)  He further noted that Steed does not take any analgesic medications for his back and has been able to return to the workforce.  (*Id.*)  Dr. Pinsky believed that Steed should only

be limited from the most heavy of activities due to the herniated discs. (*Id.* at 378.) Therefore, he reported that Steed could lift up to fifty pounds and that standing, walking, sitting, pushing and pulling were not affected by his impairments. (*Id.* at 381-2.) Furthermore, Steed had no postural, manipulative, or environmental limitations. (*Id.* at 382-4.)

On October 14, 2003, Dr. Jun Yang conducted a consultative physical examination of Steed. (R. at 385.) Dr. Yang's examination revealed that Steed had lower back pain secondary to an injury, non-insulin dependent diabetes, and status post stroke. (*Id.* at 386.) Dr. Yang also noted that Steed could lift and/or carry twenty pounds frequently and stand and/or walk for at least two hours in an eight hour workday. (*Id.* at 233, 388.)

The record also includes Steed's medical records from the Family Medicine Center in Memorial Hospital of Burlington County, located in Mount Holly, New Jersey. (R. at 165-196.) The records covered the period between February 1998 and October 1998 and indicate treatment for Steed's lower back pain, diabetes, and depression. (*Id.*)

### III.

This Court reviews the decision of the ALJ to determine whether substantial evidence on the record supports the ALJ's decision. *See* 42 U.S.C. § 405(g); *Plummer v. Apfel*, 186 F.3d

422, 427 (3d Cir. 1999) (citing *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994)). Any finding of fact made by the ALJ shall be conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate." *Plummer*, 186 F.3d at 427.

**IV.**

**A. The Five-Step Sequential Evaluation**

The SSA uses a five-step sequential evaluation process to determine whether an individual is disabled. 20 C.F.R. § 404.1520. In *Plummer v. Apfel*, the Third Circuit described the five-step evaluation:

> In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. *Bowen v. Yuckert*, 482 U.S. 137, 140, 107 S.Ct. 2287, 2290-91, 96 L.Ed.2d 119 (1987). In step two, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that her impairments are "severe," she is ineligible for disability benefits.
>
> In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. Step four requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her

> past relevant work.  *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994).  If the claimant is unable to resume her former occupation, the evaluation moves to the final step.
>
> At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability.  20 C.F.R. § 404.1520(f).  The ALJ must show there are other jobs existing in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity.  The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled.  *See* § 404.1523.

*Plummer*, 186 F.3d at 428.  If a determination about a claimant's disability can be made at any step in the sequential evaluation, the analysis is concluded without continuing on to any remaining steps.  20 C.F.R. § 404.1520(a)(4).

### B. The ALJ's Opinion

ALJ Hillegas held that Steed was "not under a disability, as defined by the Social Security Act,...during the referenced period of March 1, 1995 through May 31, 1999." (R. at 236.)  The ALJ also concluded that Steed was not entitled to a period of disability and disability insurance benefits under Sections 216(I) and 223 of the Act. (*Id*.)  He reached this determination after proceeding through the five steps of the sequential evaluation.  Upon review of the record, this Court concludes that the ALJ's findings are supported by substantial evidence as required by Section 405(g) and *Plummer*.

11

In the first step, the ALJ found that Steed had not engaged in substantial gainful activity between March 31, 1995 and May 30, 1999, the alleged closing period of his disability.[3] (R. at 230, 293.)  ALJ Hillegas determined in the second step that Steed was severely impaired as a result of the following medical conditions: a history of degenerative disc disease affecting the lumbar spine with disc herniation at the L4-5 and L5-S1 levels; non-insulin dependent diabetes; and injuries sustained in an automobile accident. (*Id.* at 235.)  To obtain a designation of severe impairment, Steed must be significantly limited either physically or mentally in his ability to do basic work activities.  20 C.F.R. § 404.1520 (c).

The ALJ acknowledged that Steed alleged a history of adjustment disorder with depressed mood.  (R. at 230.)  The ALJ found that this impairment was not a "severe" mental impairment because there was no indication in the medical evidence that this impairment lasted twelve consecutive months or that it caused vocationally relevant limitations of functions.  (*Id.* at 235.)  Consequently, the ALJ determined that Steed did not meet his burden in establishing that he had a "significant non-exertional mental impairment during the alleged period."  (*Id.*)

The ALJ's analysis of the evidence at each of the first two

---

[3] In his decision dated April 28, 2005, ALJ Hillegas erroneously listed March 1, 1995 as the alleged onset date of the closed period of disability. (R. at 228-236.)  According to Plaintiff, the alleged onset of disability was March 31, 1995.  (Pl. Brf. at 1.)

12

steps was brief.  However, it is clear from reviewing the record that these findings are supported by substantial evidence.  The ALJ's decision, his findings, and the available earnings records indicate that Steed has not engaged in substantial gainful activity during the alleged closed period of disability. (R. at 229-30, 293, 352-56, 359-64.)  The medical reports contained within the record verify that Steed's physical and mental status is consistent with the findings made in step two.

In the third step, the ALJ found that Steed's impairments were "not 'severe' enough to meet or medically equal, either singly or in combination to any one of the impairments" as set forth in 20 C.F.R. § 404, Subpt. P, App. 1. (R. at 230, 236.) Guided by his opinion dated February 3, 2004, ALJ held that Steed's impairments do not meet or equal a Listing because the medical evidence in the record did not support such a finding.[4] (*Id.* at 294.)

Next, the ALJ performed an extensive analysis of the medical reports and other relevant documentation contained within the record to determine Steed's residual functional capacity.[5] Specifically, the ALJ reviewed the medical evaluations and psychological reports generated by Dr. Fleischman, Dr. Tobe, Dr.

---

[4] It should be noted that neither of the parties dispute that Steed's impairments did not meet or equal any criteria for a listed impairment.

[5] "Residual functional capacity" is defined as the most that an individual can still do in a work setting despite any physical or mental limitations. 20 C.F.R. § 404.1545(a).

Evans, Dr. Pinsky, Dr. Yang, and Steed's subjective allegations. (R. at 230-35.)  The reports of these physicians and general medical practitioners addressed Steed's back pain, diabetes, and depression. (*Id*. at 230-35.)  Based on his analysis of this evidence, the ALJ found that Steed retained the residual functional capacity to perform light and/or sedentary work[6] during the alleged closed period of disability.  (R. at 234.)

Steed argues that the ALJ failed to properly determine his residual functional capacity during the alleged closed period of disability.  Specifically, he contends that the ALJ did not adequately consider his mental impairments in determining that he could perform light and/or sedentary work and that the ALJ should have considered the mental conditions in determining whether the impairments are "severe".  Moreover, Steed asserts that the ALJ should have solicited testimony from a vocational expert in accordance with the Appeals Council's remand order to properly determine Steed's residual functional capacity.

In determining Steed's residual functional capacity, the ALJ relied not only the medical evidence in the administrative record, but also Steed's credibility.  In assessing Steed's

---

[6]"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

14

mental impairments, the ALJ relied upon the report of Dr. Tobe, who found that Steed had "reactive anxiety and depression", but noted that this condition was "curative" with out-patient psychiatric care. (R. at 96-97.) The ALJ also noted that Steed had refused psychiatric medication during the closed period and there was no indication that this impairment lasted twelve consecutive months or caused vocationally relevant limitations of functions. (*Id.* at 235.) In fact, the report indicated that Steed had no limitations affecting his memory or concentration, that he had no delusions or hallucinations, and that he was oriented in all three spheres. (*Id.*)

Dr. Tobe did not cite any limitations for Steed due to his mental impairment. Therefore, the ALJ's determination that Steed's mental impairment was not "severe" was supported by substantial evidence in the record and was considered in the residual functional capacity assessment, contrary to Steed's assertions.

Furthermore, the ALJ determined that Steed's statements regarding his impairments and their impact on his ability to work were not entirely credible. (R. at 234.) He noted that in regard to the degree of medical treatment required, the reports of the treating and examining physicians, and the findings made upon examination of Steed that there were discrepancies between Steed's assertions and the information derived from the

15

physicians. (*Id.*)

In assessing the credibility of Steed and considering the medical evidence in the record, the ALJ's determination of Steed's residual functional capacity was supported by substantial evidence in the record. Furthermore, "a claimant's subjective statements about pain or other symptoms, without more, cannot be the basis for a disability." *Jaramillo v. Commissioner*, 130 F. App'x 557, 562 (3d Cir. 2005).

Steed's argument that vocational expert testimony was required by the Appeals Council's remand order is also flawed. As stated previously, the remand order did not require the expert testimony, but noted that the ALJ should obtain the testimony "if warranted". (R. at 332-33.) Since the ALJ determined that Steed had a non-severe mental impairment that resulted in no vocationally relevant limitations of function, there was no effects on Steed's occupational activities to warrant vocational expert testimony.

In step four, the ALJ concluded that Steed was unable to perform his past relevant work as a custodian during the alleged closed period of disability due to the determination of his residual functional capacity. (R. at 234.)

At step five, the ALJ examined the cumulative affects of Steed's impairments, age, educational background, work experience, residual functioning capacity in accordance with the

Medical-Vocational Guidelines. Incorporating all of these factors, the ALJ determined that Steed was capable of performing work and was not disabled during the alleged closed period of disability. (R. at 234.) Specifically, the ALJ concluded that "Rules 202.21 and 201.21, Tables No. 1 and 2, Subpart P. Regulations No. 4 applied as a framework in the instant case and direct a conclusion that claimant is not disabled, during the referenced period." (*Id.* at 236.)

Steed argues that the ALJ has failed to properly evaluate the medical evidence in the record in determining Steed's limitations. (Pl's Br. At 16.) ALJ Hillegas's opinion clearly reflects that a complete review was made of the evidentiary record. ALJ Hillegas reviewed the reports of Dr. Fleischman, Dr. Tobe, Dr. Tobias, Dr. Pinsky, Dr. Yang, and Dr. Evans. Moreover, he considered the testimony of Steed and determined that Steed's testimony regarding his impairments was not credible. In regard to Steed's physical impairments, the ALJ found severe physical impairments and considered them in the assessment of Steed's residual functional capacity. This determination was based not only on the report of Dr. Evans, but also on the reports of Dr. Fleischman and Dr. Tobias.

Regarding Steed's alleged mental impairments, the ALJ relied on the report of Dr. Tobe. (R. at 235.) Dr. Tobe was the only psychiatrist who examined Steed during the alleged closing period

17

and Dr. Tobe found no indication that Steed's reactive anxiety and depression caused any vocationally relevant limitations of function or that the impairment lasted twelve consecutive months. (*Id.*)  The ALJ also noted that this condition was "curative" through out-patient care, but that Steed refused psychiatric medication during this period.  (*Id.* at 96-97.)  Therefore, the ALJ properly evaluated the medical evidence of record in making his determination of Steed's impairments.

Moreover, Steed has offered no other evidence and does not suggest that his combined impairments would be medically equivalent to a listed impairment. *Ballardo v. Barnhart*, 68 F. App'x 337, 338 (3d Cir. 2003) ("However, a claimant bears the burden of producing evidence that her impairment is equivalent to a listed impairment, and equivalence to a listed impairment must be determined on the basis of medical findings 'supported by medically acceptable clinical and laboratory techniques.'")(citations omitted).  Accordingly, this Court finds that the ALJ's decision was supported by substantial evidence.

## V.

For the aforementioned reasons, the Court will affirm the

final decision of the Commissioner denying Steed's application for disability benefits.  The Court will issue an appropriate order.

Date: November 20 , 2006

                                      s/*Joseph E. Irenas*
                                    JOSEPH E. IRENAS, S.U.S.D.J.